UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

THOMAS E. PEREZ
Secretary of Labor, United
States Department of Labor,

        Plaintiff,

  v.                          ACTION NO. 2:16cv432

YAMA, INC.,
d/b/a YAMA SUSHI RESTAURANT
and JING LIN,

        Defendants.

## REPORT AND RECOMMENDATION

In this suit filed by the Department of Labor (Plaintiff or the "Department") alleging violations of the Fair Labor Standards Act ("FLSA"), Defendants, Yama, Inc. d/b/a Yama Sushi Restaurant and Jing Lin (collectively "Yama"), moved for summary judgment (ECF No. 15). Yama argues that it cannot be liable for the alleged violations because the undisputed evidence shows it paid its employees above the federal minimum wage, did not utilize a collective "tip pool," and otherwise complied with the FLSA. See Defs.' Mem. Supp. Mot. Summ. J. (ECF No. 16). The matter was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. After reviewing the parties' pleadings and factual

1

record to date, this report concludes that there is a genuine dispute of material fact about whether Yama's payments to workers complied with the FLSA. Accordingly, the undersigned recommends that the district court DENY Defendants' Motion for Summary Judgment (ECF No. 15).

## I. BACKGROUND

Yama Sushi restaurant is located in Virginia Beach, Virginia. It is owned and operated by Jing Lin ("Lin"). On July 29, 2015, the Department initiated an investigation based upon a complaint that Yama failed to pay minimum wage. Mazuera Aff. ¶ 6 (ECF No. 21-1). Wage and Hour Investigator Alvaro Mazuera ("Mazuera") conducted the investigation, which focused on Yama's time and pay practices from August 15, 2013 to August 15, 2015. Id. at ¶ 8. During the investigation, Mazuera interviewed seven employees, analyzed time and pay records, and conducted surveillance at the restaurant. Id. at ¶¶ 9-10.

Mazuera's interviews with employees revealed that wait staff, "on average," earned $2.13 per hour. Id. at ¶ 11.[1] He also learned that all tips, whether given to wait staff as cash or added onto a credit card receipt, were collected by management and then distributed at the end of each two week pay period. Id. at ¶ 12. This was confirmed by Lin and Yama's

---

[1] The facts are recited in the light most favorable to the Department as the party resisting summary judgment. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

business manager, Nana Jiang ("Jiang"). Id. at ¶ 13. Jiang told Mazuera that they did not record how much each employee collected in tips from customers, and that the amount of tips ultimately distributed to employees was based on the employee's experience, performance, and customer feedback. Id. at ¶¶ 14-15. Lin – the owner - would also serve customers directly and collect tips. Id. at ¶ 16. Jiang told Mazuera that any tips Lin received were included the tips collected from and distributed to the employees. Id.

As a result of his investigation, Mazuera concluded that Yama had violated Section 203(m) of the FLSA. Payroll time sheets from August 11, 2013 to September 6, 2014 indicated that Yama's wait staff was paid hourly wages ranging from $2.50 to $5.00 per hour before receiving tips. Id. at ¶ 18. During that time period, Mazuera calculated that, to ensure employees were paid at least the minimum wage, Yama took a $67,546.14 tip credit.[2] Id. at ¶ 24. The records also showed that Lin received a total of $43,580.87 in income from tips during that time. Id. at ¶ 20. According to Mazuera, Yama was using a "tip pool" to comply with the FLSA, and because Lin – who is the owner –

---

[2] Section 203(m)'s tip credit allows for employers to use amounts received as tips (up to $5.12 per hour) towards the required $7.25 federal minimum wage for "Tipped employees." See 29 U.S.C. § 203(m). In this case, $67,546.14 is the difference between the hourly wages (money not derived from tips) actually paid to employees between August 2013 and September 2014, and $7.25 per hour (the federal minimum wage).

participated in that pool, Yama was barred from taking the tip credit. <u>See</u> Pl.'s Mem. Opp. Mot. Summ. J., 7-8 (ECF No. 21). The investigation concluded that because of the improper tip pool, Yama is liable to its employees for a total of $111,132.54,[3] plus an equal amount in liquidated damages. Mazuera Aff. ¶¶ 26-27 (ECF No. 21-1).

Yama claims that it did not use a tip credit, but instead paid its employees a flat hourly wage. Jiang Aff. ¶ 9 (ECF No. 22-3). According to Yama, it instituted a flat hourly wage in response to complaints by wait staff that their pay was inadequate under the traditional scheme of compensation where they received a low hourly wage ($2.13 per hour) plus tips. <u>See</u> <u>id.</u> Yama consulted with an attorney and prepared a new provision of its Employee Handbook that stated:

> Waiter and Waitresses will receive an hourly wage equal to or above minimum wage requirements. These employees will not receive tips for their services. Any amounts received for tips belong to the Company. Failure of a waiter or waitress to turn over tips to the Company shall subject the employee to immediate disciplinary action, up to and including discharge. All other employees will also be compensated at an hourly wage equal to or above minimum wage requirements.

---

[3] This number represents the sum of $67,546.14 in tip credits, $43,580.87 in tips paid to Lin, and $5.53 in overtime pay owed to one employee. Mazuera Aff. ¶ 26 (ECF No. 21-1).

_Id._ at ¶¶ 10-11. After implementing the new system, according to Yama, servers were paid between $9.00 and $10.00 per hour, well in excess of the minimum wage. _Id._ at ¶ 13.

In accounting for the new payroll policy, Jiang would "arbitrarily" assign an employee a portion of the tips collected from all the servers and then supplement that amount with an hourly wage to reach the agreed upon rate of compensation. _See id._ at ¶ 17; Defs.' Mem. Supp. Mot. Summ. J., 5 (ECF No. 16). So, for example, an employee who was to earn a flat hourly wage of $10.00 might be assigned $234 of tip money for 39 hours of work, equaling an hourly rate of $6.00 per hour. _Id._ Jiang would then assign a $4.00 hourly wage to bring the employee's effective pay rate to the agreed-upon $10.00 per hour. _Id._ This assigned hourly wage would fluctuate each week depending on the amount of tips that were assigned to the employee. Two Yama employees submitted affidavits in which they attest to receiving a flat hourly wage between $9.00 and $10.00 rather than keeping the tips they collected. _See_ Correa Aff. ¶¶ 1-4 (ECF No. 16-5); Kotary Aff. ¶¶ 1-4 (ECF No. 16-4).

With respect to the tips paid to Yama's owner Lin, Jiang claimed that those monies were tips "specifically designated by customers to be paid to Lin." Jiang Aff. ¶ 21 (ECF No. 22-3). Despite allegedly telling Mazuera that Lin's tips were collected

along with the tips given to other servers, Jiang stated in her affidavit that Lin's tips were tracked separately.  <u>Id.</u> at ¶ 23.

Mazuera communicated the results of his investigation, including Yama's total alleged liability, to Lin and Jiang at a final conference held on December 9, 2015.  Mazuera Aff. ¶ 27. At the final conference, both Lin and Jiang reaffirmed that tips apportioned to Lin were taken from all the tips collected from the wait staff.  <u>Id.</u> at ¶ 28.  Yama still denied having violated the FLSA, stating that because it paid employees a flat hourly wage above the federal minimum wage, it did not avail itself of the tip credit.  Yama also claimed that Lin only received tip money that came from customers she personally served, and if it violated the FLSA, it nonetheless acted in good faith and should not be liable for liquidated damages.  The Department of Labor subsequently filed this suit to recover the money it claims Yama owes to its employees.  Based on the foregoing declarations and payroll records, Yama now moves for summary judgment.

## II.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986).  "A material fact is one 'that might affect the outcome

of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial."
<u>Anderson</u>, 477 U.S. at 249.

### III. ANALYSIS

Yama argues that it is entitled to summary judgment because there is no genuine dispute of material fact that (1) it did not use a tip credit under Section 203(m) of FLSA, (2) Lin was not paid from the pool of tips collected from the Yama wait staff, and (3) Yama acted in good faith in implementing and executing its payroll scheme. But reviewing the record in the light most favorable to the Department, disputes of material fact preclude summary judgment on each of these claims. Indeed, Plaintiff has identified evidence that Yama used a tip credit to meet the FLSA's minimum wage requirement by collecting and redistributing employees' tips in the form of wages. That same evidence would allow a reasonable juror to infer that Lin – as owner – was improperly paid money from the tip pool used to accomplish the payment scheme. Additionally, Yama has not met its burden of showing that no reasonable juror could find it did not act in good faith. Accordingly, for the following reasons, the undersigned recommends that the district court deny Yama's Motion for Summary Judgment.

## A.   Yama's Utilization of a Tip Credit

Section 203(m) of the FLSA allows employers of "tipped employees"[4] to satisfy the federal minimum wage by paying a base hourly rate (a minimum of $2.13) and accounting for the remainder (a maximum of $5.12) through the value of tips an employee receives. See 29 U.S.C. § 203(m). The use of tips to account for a portion of the required minimum wage is known as a "tip credit." 29 C.F.R. § 531.51. In order to properly utilize the tip credit, the employer must first notify employees that their tips are being counted towards the requisite minimum wage. 29 U.S.C. § 203(m). In addition, the employees must retain all tips that they receive. Id. (emphasis added). Section 203(m) does provide an exception to the employee-tip-retention requirement under which employers may require participation in a "tip pool," through which all or some of the employees' tips are collected for redistribution among a group of employees. 29 U.S.C. § 203(m); 29 C.F.R. § 531.54. Where participation in the tip pool is mandatory, it can only include employees who customarily and regularly receive tips, and the employer must (1) notify the employees of any required contribution amount, (2) only take a tip credit for the amount each employee

---

[4] A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). "A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52 (2013).

9

ultimately receives, and (3) may not retain any of the employees' tips for any other purpose. See 29 C.F.R. § 531.54.

In this case, Plaintiff has alleged that Yama utilized a tip credit to comply with the minimum wage requirement by collecting all of the servers' tips and then redistributing a portion of them as part of their total compensation. Plaintiff points to Yama's own payroll accounting between August 2013 and September 2014, which shows that Yama would pay an hourly wage below the federal minimum wage of $7.25 – amounts ranging from $2.50 to $5.00 - and supplement servers' income with tip money that was collected and pooled together. Jiang Aff. ¶ 19 (ECF No. 22-3). Yama argues that it did not use a tip credit because it had modified its Employee Handbook to set a flat hourly rate above minimum wage, identified and collected all tips as company property, and used that tip money to pay all of its operating expenses, including servers' wages. Id. at ¶ 11. In other words, Yama's argument is essentially that its servers were not "tipped employees" because they were paid a flat hourly rate rather than being allowed to retain tips and thus, the provisions of Section 203(m) do not apply. Yama further claims that the accounting records which reflect a sub-minimum hourly wage and additional tip money were carried over from its previous payroll scheme, and at most, an administrative error. Despite Yama's claims, the evidence proffered by Plaintiff is

10

more than sufficient for a reasonable juror to conclude Yama was in fact utilizing a tip credit.

To begin with, Yama's stated practice of collecting all employee tips as company property may be invalid under the FLSA. And the legality of Yama's payment scheme is particularly relevant here because its argument that Section 203(m) does not apply rests solely on the proposition that, because it implemented the payment scheme of collecting all tips from employees and paying a flat hourly wage, it did not need a tip credit because it had no "tipped employees." Even if the court were to accept this premise, Yama's payment scheme violated a Department of Labor regulation, which states that "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA." 29 C.F.R. § 531.52.[5] The regulation also states that an employer is only permitted to use an employee's tips as "credit against its minimum wage obligations" or "in furtherance of a valid tip pool." Id.

In this case, there is no dispute that Yama was using tip money, given by customers to servers as gratuity for their

_____

[5] The Department of Labor amended its regulations in 2011 to explicitly state that tips were the property of an employee whether or not the employer claimed a tip credit. See Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed. Reg. 18,832, 18,841 (Aug. 5, 2011). The amendments were in response to a Ninth Circuit decision, Cumbie v. Woody Woo, Inc., 596 F.3d 577 (9th Cir. 2010), which held Section 203(m)'s tip retention provision only applied if the employer utilized a tip credit. See id.

service, to pay its servers. Yama simply argues that as a result of its policy labeling tips as "company property," this money was transformed into general revenue which may properly be used to pay expenses, including wages.[6] As Yama points out, some courts have held the 2011 regulations purporting to invalidate such schemes to be an invalid exercise of the Department's discretion not entitled to Chevron[7] deference. See, e.g., Brueningsen v. Resort Express Inc., No. 2:12-cv-00843-DN, 2015 WL 339671 *1, *5 (D. Utah Jan. 26, 2015); but see Oregon Restaurant and Lodging Assoc., et al. v. Perez, 816 F.3d 1080 (9th Cir. 2016) (upholding 2011 regulations as proper under Department of Labor's gap-filling authority).[8] But none of the payment schemes in those cases - or any case the court could identify - were like the one used by Yama because they involved guaranteed hourly wages above the minimum wage not derived from the employees' tips.

---

[6] Interestingly, Yama's argument and the payment scheme that underlies it were among the primary reasons the Department of Labor gave for expanding the tip-retention requirement to employers who did not use a tip credit. See Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed. Reg. 18,832, 18,838-42 (Apr. 5, 2011). Referencing the regulation's expansion, Judge Harris noted in her Trejo concurrence that, "DOL concluded that the contrary reading of the statute is "unsupportable," largely because it would allow for easy evasion of the statutory cap on the percentage of an employer's minimum wage obligation that may be satisfied through tips." Trejo, 795 F.3d at 451 (Harris, J., concurring).
[7] 467 U.S. 837 (1984).
[8] The Fourth Circuit has not yet opined on the validity of the 2011 regulation. See Trejo v. Ryman Hospitality Properties, Inc., 795 F.3d 442, 445 n. 5 (4th Cir. 2015) (declining to address whether 2011 regulations were valid under Chevron).

As a result, the validity of the Department's 2011 regulation is not essential to this motion because there is strong evidence that Yama did utilize a tip credit, and there is no question that Section 203(m)'s requirements apply when a company relies on the credit.  See 29 U.S.C. § 203(m).  Again, Yama's payroll records reveal - and Yama does not dispute - that at least a portion of the $7.25 required in federal minimum wage was fulfilled with money given to its servers as gratuity.  This practice - using tip money to satisfy a portion of the minimum wage - is by definition a "tip credit."  And despite labeling its employees' tips "company property," in the Fourth Circuit, absent a valid tip pool, agreements that require employees to remit their tips to employers are invalid when that employer is taking advantage of a tip credit.  See Richard v. Marriott Corp., 549 F.2d 303, 304 (4th Cir. 1977) (stating that opinion letter from Wage and Hour Administrator following 1974 amendments to the FLSA put employer on notice that "tips had to be retained by the employees, that agreements remitting tips to the employer were henceforth invalid, and that the employer had to pay, regardless of the amount of tips, at least one-half of the minimum wage").  In Richard, a hotel's restaurant instituted a policy under which the employees' tips were used to cover the company's entire minimum wage obligation, and it would only pay

13

an additional hourly wage if the tips failed to reach minimum wage. See id.

The evidence in the summary judgment record suggests that Yama's payroll scheme, in practical effect, is analogous to the one in Richard. This renders it impermissible for the same reason. Yama's records show that the employees' tips were collected, redistributed, and then supplemented with an hourly wage to raise the effective hourly compensation of each employee above minimum wage. Yama, like the restaurant in Richard, implemented a scheme by which the value of the employees' tips was remitted to the restaurant in order to satisfy all or part of its minimum wage obligations. To that end, a reasonable juror could conclude that Yama utilized a tip credit, regardless of how it labeled the practice, because it was using money given to servers by customers as gratuity in order to pay wages that would comply with the FLSA.

Moreover, while the payroll records do not indicate that it was distributed as such, had Yama's wait staff received enough money in tips to cover Yama's obligation of separately paying $2.13 per hour towards the federal minimum wage, such practice would be expressly prohibited by the FLSA, as the court found in Richard. See id. at 305. It is also important to note that the holding of Richard did not rely on the fact that employees had ever been paid below minimum wage (the employees there averaged

14

well-above the minimum wage), but instead was rooted in the employer's use of a payment scheme that took advantage of the tip credit while failing comply with the text of the law. Richard, 549 F.2d at 305 (". . . .if the employer does not follow the command of the statute, he gets no credit."). As stated in that case, "[i]t is nonsense to argue . . . that compliance with the statute results in one-half credit,[9] but that defiance of the statute results in 100 percent credit." Id. The same logic applies here: Yama should not be permitted to implement a payroll system that provides the benefit of Section 203(m)'s tip credit without also being bound by its requirements.

Accordingly, because Plaintiff has proffered evidence that Yama utilized a tip credit by collecting money received by wait staff as gratuity for their service (i.e., tips) and then used that money to satisfy its minimum wage obligations, there is a genuine dispute of material fact and summary judgment for Defendants should be denied.

## B.   Lin's Participation in the Tip Pool

Because Yama apparently takes advantage of the tip credit through the use of a tip pool, federal regulations explicitly prohibit its owners from participating in it themselves. See 29

---

[9] "Half-credit" refers to the fact that prior to 1996 amendments to the FLSA, employers could only claim a fifty percent tip credit.

C.F.R. § 531.54.    Where participation in the tip pool is mandatory, it can only include employees who "customarily and regularly" receive tips.    29 U.S.C. § 203(m).    And the employer must (1) notify the employees of any required contribution amount, (2) only take a tip credit for the amount each employee ultimately receives, and (3) may not retain any of the employees' tips for any other purpose.    See 29 C.F.R. § 531.54. Distributions from a tip pool to non-tipped employees, or use of the collected funds for any reason other than paying the tipped employees invalidates the tip credit, rendering the employer liable to the employees for the amount of the tip credit claimed.    See 29 U.S.C. § 203(m).

Plaintiff has introduced evidence – statements made by Jiang – that all of the tip money, including tips earned by Lin, was put into one pool of money and then distributed between Lin and the employees.    See Mazuera Aff. ¶ 16 (ECF No. 21-1).    It is undisputed that Lin is the owner of Yama, and the employer of all of its wait staff.    Yama argues in its pleadings that all of Lin's tips ($43,580.87 out of at least $111,127.01)[10] were earned solely by her, and that the funds were tracked separately.

---

[10] $111,127.01 is the sum of tips paid directly to Lin ($43,580.87) and the tip credit taken by Yama ($67,546.14).    As Plaintiff highlights, this suggests that nearly forty-five percent of the total amount of tips were earned by Lin. While the ratio is substantial, the actual amount received by Yama's wait staff in tips could be higher, as the tip credit only reflects the amount of tip money that makes up the difference between the federal minimum wage and hourly wages paid by Yama.

16

Therefore, there is a clear dispute of material fact over whether Lin – the owner and employer – participated in a tip pool with her tipped employees. Contrary to Yama's position, it is not undisputed that Lin's reported tip income was kept separate from the tip pool used to pay servers' wages, or that all of the distributions to Lin were in fact tips that she personally earned from customers. Notably, while Lin's tips were purportedly tracked separately, Yama concedes that it did not track the number of tips any other employee collected individually. For this reason, the court cannot accept Yama's argument that the Department has no claim to the monies paid to Lin in tips. There is a genuine dispute as to the source of that money. A reasonable juror could infer that one person – especially the owner and operator of a restaurant – would not be able to earn nearly the same amount in tips as all of the other servers (as many as 7 in this case) combined.

Because Plaintiff has proffered evidence that the tips distributed to Lin came from a pool of money including tips earned by servers, there is a genuine issue of material fact over whether Lin participated in the Section 203(m) tip pool and summary judgment should be denied.

## C.    Yama's Good Faith

Section 216(b) of the FLSA states that "[a]ny employer who violates the provisions of sections 6 and 7 . . . shall be

liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and an additional equal amount in liquidated damages." 29 U.S.C. § 216(b). Only where "the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA may the court, in its discretion, deny or reduce liquidated damages. 29 U.S.C. § 260; see also Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 357 (4th Cir. 1994). Although the Fourth Circuit has found that the plain language of Section 260 places a "plain and substantial burden" upon the employer to persuade the court of both good faith and reasonableness, it is not an abuse of discretion for a court to rely on one of those elements to deny or modify liquidated damages. See Mayhew v. Wells, 125 F.3d 216, 220 (4th Cir. 1997) (citing Richard, 549 F.2d at 306).

In this case, the evidence shows that Yama created a pay scheme that takes advantage of the Section 203(m) tip credit but violates other portions of the statute. There is also a factual dispute as to whether tips allegedly received by Lin were added to the employee tip pool before being redistributed to her. At this stage, Yama has not introduced evidence that meets the "plain and substantial" burden of persuading the court that it

18

either acted in good faith or was reasonable in its formulation and execution of the payroll scheme. For these reasons, summary judgment in favor of Yama would be inappropriate. Accordingly, because Yama has not introduced evidence that shows it acted in good faith or reasonably, as a matter of law, this court recommends that summary judgment be denied.

## IV. <u>RECOMMENDATION</u>

For the foregoing reasons, the court recommends that the Defendants' Motion for Summary Judgment as to all claims be DENIED (ECF No. 15).

## V. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

December 6, 2016